```
              UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS
```

| | |
|---|---|
| CHRISTINE M. VARAD,<br><br>         Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL, COMMISSIONER,<br><br>         Defendant. | No. 19-CV-11480-IT |

## **REPORT AND RECOMMENDATION ON PENDING MOTIONS**

CABELL, U.S.M.J.

## I. **INTRODUCTION**

*Pro se* plaintiff Christine Varad alleges that the Commissioner of the Social Security Administration (SSA) has improperly denied or attempted take back her benefits under two different SSA programs. The case is procedurally complex but in simplest terms the plaintiff seeks to reverse the Commissioner's decision to deny her application for Title II disability benefits, and to retain or recover thousands of dollars in Title XVI benefits the Commissioner claims it has overpaid her. The case has spawned several motions, six of which have been referred to this court for a report and recommendation.

The plaintiff has filed five of them. She moves for summary judgment on her Title II claim (D. 12); for leave to file a second amended complaint (D. 15); for leave to file a third amended complaint (D. 23); to reverse the Commissioner's decision to recover past Title XVI benefits payments (D. 31); and to reverse the Commissioner's decision denying her Title II application (D. 54).

In response, the Commissioner argues that, while it believes the plaintiff's Title II claim lacks merit, the court should reverse the Commissioner's decision and remand the Title II claim for a new administrative hearing, because the Appeals Council (AC) committed certain procedural errors. The Commissioner contends that the court lacks subject matter jurisdiction to hear the plaintiff's Title XVI claim because it remains under SSA consideration and the Commissioner has not yet issued a final decision, meaning the plaintiff has not yet fully exhausted her administrative remedies. The Commissioner thus moves pursuant to 42 U.S.C. § 405(g) to reverse the Commissioner's final decision and remand the matter with respect to the plaintiff's Title II claim, and to dismiss the Title XVI claim. The Commissioner also requests that the two motions seeking leave to amend be denied as moot. (D. 38). The plaintiff opposes. (D. 39).

For the reasons discussed below, I find that the plaintiff's Title II claim is properly before the court and may be adjudicated.

Based on that finding, I recommend that the Commissioner's motion to remand (D. 38) be denied and that the Commissioner be ordered to respond on the merits to the plaintiff's motion for summary judgment on her Title II claim (D. 12), which should itself be treated as a motion under 42 U.S.C. § 405 to reverse the Commissioner's final decision on her Title II claim.  I also find that the plaintiff's May 2020 motion to reverse the Commissioner's final decision on her Title II application (D. 54) is essentially duplicative of her August 2019 motion for summary judgment, and therefore should be denied as moot.

I find further that the court lacks subject matter jurisdiction to hear the plaintiff's Title XVI claim because the Commissioner has not yet rendered a final decision regarding the total amount of any overpayments.  Based on that finding, I recommend that any portion of the amended complaint be dismissed without prejudice to the extent it relates to the plaintiff's Title XVI claim.  I recommend further that the plaintiff's motions seeking leave to amend (D. 15, 23) be denied as moot where they relate only to her Title XVI claim and/or do not implicate the merits of the plaintiff's Title II claim.

## II.   RELEVANT PROCEDURAL BACKGROUND

The plaintiff previously applied for Title II disabled adult child benefits and also at some point began receiving Title XVI Supplemental Security Income benefits.

On February 8, 2017, an ALJ determined that the plaintiff was not eligible for Title II benefits. The plaintiff requested review of the ALJ's decision by the Appeals Council (AC).

On August 7, 2018, the same ALJ issued a decision assessing an overpayment of $2,187 in Title XVI benefits due to extensive resources. The plaintiff sought review by the AC regarding the ALJ's assessment.

On June 11, 2019, the AC issued an unfavorable decision denying the plaintiff's Title II claim.

On July 5, 2019, the plaintiff initiated this action by way of a complaint. Where directed on the complaint form to indicate the basis for federal court jurisdiction, the plaintiff listed review of the SSA's Title II decision as well as the ALJ's Title XVI decision as bases. The plaintiff referenced her Title XVI claim even though she had requested review of the ALJ's decision and the matter was then pending before the AC.

On August 5, 2019, the plaintiff filed an amended complaint alleging that the SSA's efforts to collect her alleged Title XVI overpayments violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692 et *seq*, the Privacy Act, 5 U.S.C. § 552a, and the U.S. Constitution. (D. 9).

On August 16, 2019, the AC denied review of the plaintiff's Title XVI claim and indicated moreover that it was forwarding a second overpayment of over $40,000 to the hearing office.

4

On August 19, 2019, the plaintiff moved for summary judgment on both her Title II and Title XVI claims.

On August 29, 2019, the plaintiff moved for leave to file a second amended complaint raising a "third claim" "integrally connected with the [Title XVI-related] FDCPA claim." The claim appears to arise from the failure of SSA officials to satisfactorily respond to the plaintiff's request for a hearing. (D. 15).

On September 10, 2019, the AC reopened its June 2019 decision regarding the plaintiff's Title II claim, notwithstanding the fact that the plaintiff had already initiated this action challenging the AC's June 2019 decision, and issued a new unfavorable decision the same day.

On September 19, 2019, the plaintiff moved for leave to file a third amended complaint to ostensibly add a fourth claim, but in reality arguing that the AC lacked jurisdiction to reopen proceedings regarding her Title II claim where she had already initiated this action. (D. 23).

On October 17, 2019, the plaintiff moved to reverse the decision terminating her Title XVI benefits (and seeking to recover alleged overpayments), notwithstanding the fact that the AC had indicated in August 2016 that, while it agreed with the ALJ's assessment regarding an approximately $2,200 overpayment, the

matter remained ongoing because the AC was forwarding the matter for further hearing on a potentially larger overpayment. (D. 31).

On May 29, 2020, the plaintiff moved to reverse the Commissioner's decision denying her Title II application. The motion essentially seeks the same relief as the plaintiff's previously filed motion for summary judgment. (D. 54).

## III. DISCUSSION

The Commissioner argues that the AC violated SSA policy in September 2019 when it reopened the plaintiff's Title II claim after the plaintiff had already elevated the matter to federal court. In seeking reversal and remand, the Commissioner hints that substantively the AC made the correct (unfavorable) decision, but procedurally needs to reissue its decision following a formal remand so that the decision can be "jurisdictionally sound". With respect to the plaintiff's Title XVI claim, the Commissioner argues that the claim is not properly before the court where it remains at the administrative hearing stage. The court addresses each benefits claim separately.

### A. The Title II Claim

#### 1. Benefits Standard

The plaintiff seeks review of the Commissioner's determination that she is not eligible for Title II Disabled Adult Child benefits. To be eligible for disabled child benefits, a claimant must "prove that he or she is under a disability that

6

began before age 22 and existed at the time of the claimant's application for benefits." 42 U.S.C. § 402(d)(1)(B)(ii). A claimant is "under a disability" if the claimant is unable to engage in "substantial gainful activity" (SGA) by reason of any medically determinable mental or physical impairment that has lasted or can be expected to last for 12 months or more. 42 U.S.C. § 423(d)(1)(A). The disability must be continuous from before age 22 until the claimant's application; thus, if an applicant at any time since her 22nd birthday has engaged in substantial gainful activity, she is not disabled within the meaning of the statute and is not entitled to disabled child benefits. *Anderson v. Heckler*, 726 F.2d 455, 456 (8th Cir. 1984); Social Security Ruling (SSR) 85-5c; 20 C.F.R. § 404.1520(b).

### 2. Procedural History

The plaintiff applied for Title II benefits on December 2, 2013. She was deemed ineligible on February 11, 2014 because the SSA concluded that she had engaged in SGA after the age of 22. (SSA Administrative Record of the proceedings, p. 21 (R.__)). On January 30, 2017, an Administrative Law Judge (ALJ) convened a hearing following the plaintiff's request for reconsideration. (R. 21). On February 8, 2017, the ALJ denied her claim. (R. 27).

On June 11, 2019, the AC affirmed the ALJ's decision following the plaintiff's request for further review. (R. 11).

Approximately one month later, the plaintiff commenced this action, on July 5, 2019, and timely served the Commissioner. (D. 1, 10).

Then, and providing the basis for the Commissioner's motion to remand, the AC "reopened" the plaintiff's Title II appeal on September 10, 2019, to "address additional information it received prior to June 11, 2019 that was not associated with the claims file," apparently pieces of correspondence the plaintiff had submitted on various dates in May 2019. (D. 38). The AC found that the evidence was not relevant because it concerned events postdating the plaintiff's 22nd birthday and therefore did not affect the decision about whether she became disabled prior to age 22. The AC found anew that the plaintiff was not entitled to Title II benefits. (Id.).

Both parties agree that the AC's "reopening" of the plaintiff's case was improper because it violated the SSA's Hearings, Appeals, and Litigation Law Manual, known as the HALLEX. Rule I-3-9-5 of the HALLEX states that "[t]he AC has primary jurisdiction to consider reopening and revising its own decisions (unless the decision is pending in Federal court)". The AC's reopening of the plaintiff's Title II claim after the plaintiff's federal court complaint had been filed indisputably contravened the HALLEX because the AC at that point no longer had primary jurisdiction to reopen its own decision.

The parties disagree, however, on the appropriate remedy for the AC's so-called error. The Commissioner contends that the error warrants a reversal of the AC's decision and remand of the entire Title II claim for further hearings. (D. 38). However, the Commissioner carefully does not acknowledge or suggest that the AC rendered an erroneous decision on the merits. Rather, the Commissioner urges remand so that a "jurisdictionally sound" decision can be made. (Id.).

The plaintiff contends in her motion seeking leave to file a third amended complaint that the AC lacked the jurisdiction to reopen the matter, and that the remedy should be to declare the September 2019 decision "void" and proceed based on the June 2019 decision. (D. 23). The plaintiff argues that a remand would be futile and unfair where an ALJ and the Appeals Council have both already rendered findings on the issue, and a remand would do no more than delay her long quest to receive Title II benefits.

### 3. Legal Standard for Remand

The Supreme Court has identified two different kinds of remand available under 42 U.S.C. § 405(g), the statute governing review of SSA decisions: remand under sentence four and remand under sentence six. *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). Sentence four, which the Commissioner invokes here, authorizes a court to enter "a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for

9

a rehearing".[1]  While a plaintiff's ultimate goal in many SSA review cases is to achieve the same result, the plaintiff here strongly opposes remand and urges the court to reach the merits of her claim and issue an order directing the SSA to award her benefits.[2]

### 4. Analysis

Remand is not warranted.  Rather, in the court's view, the AC's June 2019 decision denying the plaintiff's Title II application should be viewed as the Commissioner's final decision on her application and consideration of the federal complaint should proceed accordingly.  The AC's September 2019 decision, filed after this case commenced, should be ignored.  The court's conclusion rests on a number of grounds.

In the first instance, it is not clear that the AC's reopening of the plaintiff's Title II claim in contravention of the HALLEX creates a legal issue at all, let alone one requiring remand.  The Commissioner stops well short of making such an argument and notably has not cited to any cases referencing HALLEX Rule I-3-9-

---

[1] By contrast, "a court under the sixth sentence does not affirm, modify, or reverse the Secretary's decision...[but] remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Id*.

[2] A federal court can grant the relief the plaintiff seeks if "the underlying facts and law are such that the agency has no discretion to act in any manner other than to award or to deny benefits." *Seavey v. Barnhart*, 276 F.3d 1, 11 (1st Cir. 2001).  The court is not in a position to make that assessment here where the Commissioner has not yet submitted a memorandum addressing the merits of the plaintiff's claim.

5 or discussing the legal ramifications, if any, of a violation of the rule by the AC. The First Circuit does not appear to have yet addressed whether the HALLEX has the force of law but at least one circuit has held that it does not. *See Moore v. Apfel*, 216 F.3d 864, 868 (9th Cir. 2000) (finding that HALLEX is a purely internal manual and as such has no legal force and is not binding). There thus appears to be no legal precedent compelling the AC to follow the HALLEX or suggesting a remand if Rule I-3-9-5 is violated.

It is similarly not clear why the Commissioner or the AC could not simply declare the AC's September 2019 decision null and void on the ground that the AC no longer had the jurisdiction to reopen the plaintiff's claim once she brought a federal action. Indeed, that is exactly what the plaintiff suggests in her motion for leave to file a third amended complaint. The Commissioner's failure to identify any legal error with specificity or to address why it cannot just declare the AC's actions void dilutes somewhat the force of its request for a reversal and remand as a prophylactic.

Moreover, the AC's decision to reopen the plaintiff's Title II claim, which the court presumes it did without awareness of the instant matter, was demonstrably harmless. The AC explicitly stated that it found the new evidence to be categorically irrelevant and did not consider it in deciding anew that the plaintiff was not eligible to receive Title II benefits. As such, the AC's action, while erroneous, amounts, practically speaking,

11

to a red herring where nothing it did altered the substance of the Title II record before the court or affected the merits of either party's claims.[3]

Further, a remand would be an exercise in futility and inefficiency where the Commissioner has hinted that a new round of administrative hearings on the plaintiff's Title II claim would serve no purpose other than to eliminate a potential undefined legal issue caused by the AC's September 2019 reopening, and would not result in anything other than another denial.

Finally, ordering a remand on these facts might be seen to suggest that a federal court may lack authority to legitimately adjudicate a plaintiff's timely federal complaint should the underlying matter subsequently be reopened administratively, even by mistake. This court is reluctant to recommend any action implicitly endorsing such a notion in the absence of clear and persuasive supporting authority. This is especially the case where, as noted above, it is not clear that the Commissioner cannot simply cure the AC's error by vacating or rescinding the September 2019 decision.

---

[3] To be sure, the plaintiff avers in her motion seeking leave to file a third amended complaint that the September 2019 decision amounted to an improper "revising" of the AC's June decision that caused her "harm and prejudice" but this appears to be boilerplate phraseology rather than a deliberate assertion. In any event, she does not specify how the AC's "revised" decision might have harmed her where the AC did not consider any new evidence or modify its analysis or prior decision. The court divines no ostensible harm to or impact on the merits of her federal claim where the AC in essence merely reaffirmed its prior decision without incorporating any new evidence.

In sum, the court finds that the plaintiff's Title II claim as based on the AC's June 2019 decision is properly before the court and may be adjudicated. The Commissioner should be ordered to respond to the plaintiff's claim on the merits contained in her memorandum of law to her motion for summary judgment at D. 13.

**B. The Title XVI Claim**

The plaintiff seeks review of the Commissioner's determination that she has been overpaid Title XVI benefits. The court presumes that a plaintiff may properly bring claims regarding different types of benefits in the same complaint provided that each claim is ripe when it is brought. *See, e.g., McParland v. Colvin*, 215 F. Supp. 3d 129, 130 (D. Mass. 2016) (plaintiff sought review of Title II and Title XVI denials).

Here, however, the plaintiff's Title XVI complaint was not ripe when she brought this action on July 5, 2019. The plaintiff received an unfavorable Title XVI ruling by an ALJ on August 7, 2018, sought review by the AC, and then filed the present action on July 5, 2019 while the review was still pending; there is no dispute that the AC did not render a decision on the plaintiff's Title XVI appeal until well over a month later, on August 16, 2019. (D. 15-2).

Moreover, the AC's decision was not final. On the contrary, the AC indicated it had determined that an overpayment had occurred but announced that it intended to forward the matter for further

13

hearing to determine the total amount of the overpayment. As far as the court is aware, that process remains unresolved at present where the Commissioner has stated that "no hearing has been held on that larger overpayment." (D. 38). It follows that the Commissioner has not yet issued a final decision regarding the plaintiff's Title XVI claim.

Further, and not surprisingly, the court has not received a complete and official record of the plaintiff's Title XVI proceedings, and therefore is not in a position to make any rulings on the merits of the plaintiff's claims, including her claim that it was improper for the AC to *sua sponte* consider the possible existence of a larger $40,000 overpayment where that issue was not the subject of the ALJ's decision or her request for reconsideration. (D. 31). The plaintiff is of course entitled to seek review of the Commissioner's entire treatment of her Title XVI benefits, but that review should come only after the administrative process has fully run its course and a full record can be presented to the court.

Consequently, the court finds that, because the plaintiff has not fully exhausted her administrative remedies with respect to her Title XVI claim, the court lacks subject matter jurisdiction to hear that claim. *See Wiesner v. Berryhill*, No. 3-17-CV00704-MMD-CBC, 2018 WL 5540967, at *2 (D. Nev. Oct. 10, 2018), report and recommendation adopted, No. 3-17-CV00704-MMD-CBC, 2018 WL

5499542 (D. Nev. Oct. 26, 2018) (finding that court lacked subject matter jurisdiction to review plaintiff's claim under 42 U.S.C. § 405(g) where plaintiff filed claim before receiving final AC decision); *Goulet v. Schweiker*, 557 F. Supp. 1250, 1261 (D. Vt. 1983) (same).  Accordingly, any portion of the amended complaint relating to the plaintiff's Title XVI claim should be dismissed, but without prejudice to the plaintiff seeking federal court review after further hearings are held, the scheduling of which should not be affected by the present suit.

**IV.  CONCLUSION**

Based on the foregoing, I recommend as follows:

(1) The Defendant's Motion for Entry of Judgment Under Sentence Four of 42 U.S.C. § 405(g) With Reversal and Remand of the Cause to the Defendant (D. 38) should be DENIED;

(2) Any portion of the amended complaint (D. 9) relating to the plaintiff's Title XVI claim should be DISMISSED, but without prejudice and subject to refiling after the plaintiff has exhausted remedies;

(3) The plaintiff's Motion for Permission to File "Second Amended Complaint" pursuant to Fed. R. Civ. P. 15(a) (D. 15) should be DENIED as moot;

(4) The plaintiff's Motion for Permission to File "Third Amended Complaint" pursuant to Fed. R. Civ. P. 15(a) or

15

       Alternatively Motion to Find the September 10, 2019 S.S.A. Appeals Council Decision Against the Plaintiff Void for Lack of Jurisdiction S.S.A. Hallex Rule I-3-9-5(C) (D. 23) should be <u>DENIED</u> as moot;

(5) The plaintiff's Motion for Order Reversing Social Security Administration Action Terminating Plaintiff's Supplemental Security Benefits (D. 31) should be <u>DENIED</u> where the Commissioner has not yet issued a final decision regarding the plaintiff's Title XVI claim; and

(6) The plaintiff's Motion for Order Reversing Final S.S.A, Agency Action taken by the Commissioner on July 11, 2019/reopened *sua sponte* September 10, 2019 Acting as the S.S.A. Appeals Council Which Denied Appellant Benefits Based on an Unproven Claim of "Substantial Gainful Activity" "S.G.A." (D. 54) should be <u>DENIED</u> as moot where it is duplicative of the plaintiff's Motion for Fed. R. Civ. P. Rule 56 Summary Judgment (D. 12).

Assuming the foregoing recommendations are adopted, the plaintiff's Motion for Summary Judgment (D. 12) should be treated as a motion seeking to reverse a final decision of the Commissioner denying the plaintiff's application for Title II benefits, and the

Commissioner should be ordered to respond to the motion on the merits within 30 days from the presiding judge's ruling.[4]

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED:  October 9, 2020

---

[4] The parties are hereby advised that under the provisions of Federal Rule of Civil Procedure 72(b), any party who objects to this recommendation must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  *See Keating v. Secretary of Health and Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *see also Thomas v. Arn*, 474 U.S. 140 (1985).